UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIVERSIFIED LENDERS, LLC,

    Plaintiff,

v.                            Case No: 8:16-cv-1058-T-33MAP

AMAZON LOGISTICS, INC.,
and VERTICAL HOLDINGS
UNLIMITED, LLC,

    Defendants.

_____/

**ORDER**

This matter comes before the Court upon Defendant/Cross Claimants' Amazon Logistics, Inc.'s Motion to Transfer Venue (Doc. # 27), filed on June 17, 2016. Plaintiff, Diversified Lenders, LLC filed a response in opposition on July 1, 2016. (Doc. # 33). With leave of Court, Amazon filed a reply in support of its Motion on July 13, 2016. (Doc. # 41). Defendant Vertical Holdings Unlimited, LLC (VHU) failed to appear before the Court or file a response to the Motion. For the reasons stated herein, Amazon's Motion is granted.

**I.**     **Background**

On March 9, 2015, VHU entered into a delivery and transportation agreement (the Agreement) with Amazon, under which Amazon purchased services from VHU. (Doc. # 1 at ¶ 10).

1

The existence of the Agreement is not in dispute. VHU performed services pursuant to the Agreement. (Id.). Diversified alleges it had entered into an accounts receivable finance agreement and related revolving credit note with VHU, acquiring Amazon's debt to VHU. (Id. at ¶¶ 10, 20). Diversified claims that on April 28, 2015, and September 30, 2015, both Diversified and VHU sent Amazon a Notice of Assignment, requiring Amazon to pay VHU's account balances to Diversified rather than to VHU. (Id. at ¶¶ 11-12, 15). Diversified alleges that neither VHU nor Amazon have made any payments to Diversified, and that it is entitled to approximately $1.7 million, plus interest. (Id. at ¶¶ 18, 22).

The complaint alleges proper venue in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b), because VHU is a Florida limited liability company, both managing members reside in Valrico, Florida, and VHU's principal place of business is in Tampa, Florida. (Doc. # 1 at ¶ 7). Additionally, Amazon engages in "systemic and not isolated business within Florida." (Id. at ¶ 6). Amazon does not dispute these facts. However, in its Answer (Doc. # 23), Amazon asserts the Agreement between VHU and Amazon contained a forum-selection clause, requiring any disputes arising out

of their Agreement to be litigated exclusively in the federal and state courts of King County, Washington. (Id. at ¶ 4).

Amazon filed its Answer, by which it asserts a cross claim against VHU, and filed the instant Motion along with its Reply. The Court also held a Case Management Hearing and entered its Case Management and Scheduling Order on June 20, 2016. (Doc. ## 28-29). In addition, the Court scheduled mediation for February 17, 2017. (Doc. # 38). Diversified filed an application for entry of Clerk's Default against VHU on July 1, 2016, and the Clerk entered the Default against VHU on July 5, 2016. (Doc. ## 35, 37).

## II. Legal Standard

The United States Supreme Court has held that the proper means for enforcement of a forum-selection clause is a motion to transfer venue pursuant to either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W.D. of Tex., 134 S. Ct. 568, 579 (2013) ("Section 1404(a) therefore provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district."); Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 28 (1988). In adjudicating motions to transfer, the district court must first determine if venue was properly established under 28 U.S.C. § 1391(b). See Atl. Marine Constr. Co., 134

3

S. Ct. at 577. If venue was not proper, then § 1406(a) governs. Id. Conversely, if venue is proper, then § 1404(a) governs. See Id. at 578; Van Dusen v. Barrack, 376 U.S. 612, 634 (1964).

Here, venue was properly laid under § 1391(b), which provides that a civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3). VHU is a Florida entity, and it performed work for Amazon pursuant to the Agreement in Florida. (Doc. # 1 at ¶¶ 1, 4, 7; Doc. # 33 at 2, 3). In addition, as alleged by Diversified, Amazon "engages in systematic and not isolated business within Florida." (Doc. # 1 at ¶ 6). Therefore, venue is proper under § 1391. Accordingly, § 1404(a) governs.

Section 1404(a) reads: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or

division where it might have been brought or to any district or division to which all parties have consented." The statute is "a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system." See Atl. Marine Constr. Co., 134 S. Ct. at 580 (citing Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430 (2007)). The *forum non conveniens* analysis is traditionally conducted by a district court through evaluating both the private interests of the parties and interests of the public. See Id. at 581.

In Atlantic Marine Construction Company, the Supreme Court established principles that guide venue analysis under § 1404(a) when a forum-selection clause is present, changing the analysis from the traditional form in three critical ways. See Id. First, "the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." Id. Next,

> a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves

5

>    or their witnesses, or for their pursuit of litigation.

Id. at 582. Finally, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules – a factor that in some circumstances may affect public-interest considerations." Id.

### III. Diversified's Alleged Factual Dispute: Which Document Memorializes the Agreement

The parties disagree on which document memorializes the Agreement. Amazon submitted two documents, each titled "Delivery Provider Terms of Service" (Amazon's Terms). (Doc. ## 27-3, 27-4). Amazon also provided an affidavit from George Harvey, an employee and custodian of records for Amazon. (Doc. # 27-2). Harvey affirms that Exhibit A is the unformatted text of Amazon's Terms as agreed to by VHU and Exhibit B is the formatted version as updated in October. (Id. at ¶ 3).

Along with its reply brief, Amazon also submitted an affidavit from Phillip J. Bongiorni (Doc. # 42), attached to which is a document titled "Delivery Provider Terms of Service: Work Order" (Amazon's Work Order). (Doc. # 42-1). Bongiorni avers that Amazon's Work Order is generated by Amazon after a client agrees to Amazon's Terms, by clicking

an "accept" box after reading the Terms online. (Doc. # 42 at ¶ 2). Bongiorni also swears that if VHU had not clicked "accept," then Amazon would not have entered into Amazon's Work Order with VHU, or conducted any further business on the matter. (Id.).

Amazon explains that when it enters into this type of agreement with another entity, the first step requires that entity to agree to Amazon's Terms online. (Doc. # 41 at 2). Then the Work Order containing the specific schedule of business is generated separately. (Id.). The Work Order distinguishes itself by adding the words "Work Order" to the top of the page under "Delivery Provider Terms of Service." (Doc. # 42-1).

Diversified submitted a document it assumes memorializes the Agreement, entitled "Delivery Provider Terms of Service: Work Order" (Diversified's Work Order), which is attached to a sworn affidavit from Lisa Bythewood, CEO of VHU. (Doc. # 33-1). Bythewood affirms the agreement that VHU entered into with Amazon is embodied by this document, and only this document. (Id. at ¶ 7). Diversified's Work Order contains the same introduction as Amazon's Work Order, then redacted paragraphs with the same headings as Amazon's Work Order. Compare (Doc. # 33-1 at 4), with (Doc. # 42-1 at 1).

Diversified's Work Order and Amazon's Work Order are the same document. However, these identical work orders only reflect half of the Agreement. Amazon's Terms reflect the other half. This relationship is demonstrated from the statements of Harvey and Bongiorni, and from the final sentence of the introduction paragraph of both Work Orders. The sentence reads: "Please see the Terms for definitions of certain capitalized terms used in this Work Order." (Doc. ## 33-1, 42-1). It is evident that Amazon generates a work order only after Amazon's Terms have been accepted online. Both documents were agreed to by VHU, via clickwrap checkbox online for Amazon's Terms, and handwritten signature on Amazon's Work Order. The Agreement is thus memorialized by both identical Work Orders and Amazon's Terms. The Court finds no factual dispute about which documents govern. The Court adopts both Amazon's Terms and Amazon's Work Order as the governing documents of the Agreement.

IV. **The Applicability of the Forum-Selection Clause**

The Court now considers the relevant and applicable part of Amazon's Terms. Specifically, Amazon's Terms read as follows:

> These Terms and the Work Orders are governed
> by the applicable Governing laws, excluding
> any conflict of laws rules. You irrevocably

> submit to venue and exclusive jurisdiction in the applicable Chosen Courts for any dispute arising out of or relating to these Terms, any Work Order or the Services, and you waive all objections to jurisdiction and venue of the applicable Chosen Courts.

(Doc. ## 27-3 at 8, 27-4 at 10).

Diversified argues: "the Service Agreement does not contain a forum-selection clause." (Doc. # 33 at 5) (emphasis removed). While Diversified is correct that the identical Work Orders do not contain a forum-selection clause, Diversified ignores the fact that Amazon's Terms do contain the forum-selection clause. As previously stated, both documents constitute the entire agreement. And, Amazon's Terms are explicit: by clicking accept, VHU agreed to resolve any legal dispute that arose from the Agreement in Washington.

Although Diversified is not an original party to the Agreement, it is the assignee of VHU's rights under the Agreement. An assignee "stands in the shoes" of the original party to a contract. See Kostelac v. Allianz Global Corp. & Specialty AG, 517 Fed. Appx. 670, 675 (11th Cir. 2013) (citing Houlk v. Comm'r of Internal Revenue, 173 F.2d 821, 825 (5th Cir. 1949)). The assignee does not possess any greater rights than what the former party possessed under the agreement. See id., 517 Fed. Appx. at 676 (citing Crossman v. Fontainebleau

Hotel Corp., 273 F.2d 720, 725 (5th Cir. 1959)). Therefore, Diversified's rights as assignee to sue Amazon are limited in the same way that VHU's rights were limited. Diversified is bound by the forum-selection clause.

Diversified challenges only the existence of the clause itself, it does not challenge whether the text of the clause is valid. Furthermore, the Court notes that forum-selection clauses are prima facie valid, and must be enforced unless shown to be unreasonable under the circumstances. See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). Click-wrap contracts, like those used in this case, are valid contracts. See Salco Distributors, LLC v. iCode, Inc., No. 8:05-CV-642-T-27TGW, 2006 WL 449156, at *2 (M.D. Fla. Feb. 22, 2006) ("In Florida and the federal circuits . . . click-wrap agreements are valid and enforceable contracts."); see also Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 585 (1991) (holding that a non-negotiated forum-selection clause in a form ticket may be enforceable). Therefore, the Court finds the forum-selection clause is a valid part of the Agreement, and binds the parties.

## V. *Forum Non Conveniens* **and Public Policy**

Diversified relies heavily upon private interest factors in its analysis. (Doc. # 33 at 8-9). However, because there

is a valid forum-selection clause binding the parties, the Court does not consider private interest factors in its analysis. See Atl. Marine Const. Co., 134 S.Ct. at 581-82 (stating that a court should not consider private interest factors when facing a forum-selection clause).

Rather, the correct legal standard for determining enforceability of a forum-selection clause comes from M/S Bremen. To overcome a valid forum-selection clause, a plaintiff must be able to show some "strong public policy" concern that makes enforcement of the clause unreasonable. See M/S Bremen, 407 U.S. at 15. A clause is unreasonable if enforcement would, "for all practical purposes [deprive a plaintiff] of his day in court." Id. at 17-18.

Here, the evidence does not show that a transfer would deprive Diversified of its day in court. Diversified argues that because the case involves parties who are "either Florida residents . . . or who conduct business in and contract business with residents of Florida (Amazon), it is no burden on the courts or the potential jury pool to adjudicate this controversy." (Doc. # 33 at 10).

While that may be true, the community does not have a strong and clear localized interest in deciding the controversy. VHU conducted work for Amazon not only in

11

Florida, but, according to the amendments to Amazon's Work Order, VHU conducted operations for Amazon in Maryland, Texas, Virginia, New Jersey, California, Pennsylvania, and Arizona. (Doc. # 33 at 2). Diversified is an Oklahoma company, and has presented the Court with no information demonstrating other ties to Florida beyond its financial stake in the Agreement. Thus, no strong and clear localized interest in resolving the case would be deprived by transfer.

Diversified further argues the Case Management and Scheduling Order entered by the Court on June 20, 2016, might impact the docket of the Washington Court. The action is currently scheduled for trial approximately 16 months from when the action was instituted, while the median time in Washington for such an action from filing to trial is 17.6 months. (Doc. # 33 at 10). There is no significant public policy interest impacted by this fact. Once the case is transferred to the Western District of Washington, if that court needs to adjust deadlines, then it may easily do so. Additionally, a judgment obtained by Diversified in any federal court will have the "same effect" and "may be enforced in like manner." See 28 U.S.C. § 1963. This ensures that Diversified will not, "for all practical purposes," be deprived of its day in court.

Furthermore, this is not the first time Amazon has successfully transferred an action to the Western District of Washington from Florida via a forum-selection clause. In Segal v. Amazon.com, Inc., 763 F. Supp. 2d 1367 (S.D. Fla. 2011), the court enforced a similarly worded forum-selection clause Amazon used in a click-wrap form contract. There, Amazon required any individual registering for an Amazon Marketplace Seller Account to navigate through terms and conditions online, and then click "accept." See Segal, 763 F. Supp. 2d at 1368. Segal raised as a defense in opposition to transfer that the clause was unfair, and was both "procedurally and substantively unconscionable." Id. Additionally, Segal claimed transferring the action would be financially unfeasible for them. Id. at 1370. Nevertheless, the court transferred the action, finding such financial hardship did "not rise to the level of difficulty and inconvenience that would deprive them of their day in court." Id. at 1370. This case does not differ in any significant way from Segal.

## VI. Conclusion

Diversified is bound by the applicable forum-selection clause in Amazon's Terms, which limits the forum of any dispute arising from the Agreement between VHU and Amazon to

13

Washington. The forum-selection clause is a valid part of Amazon's Terms that VHU accepted. To overturn a valid forum-selection clause, the clause must implicate strong public policy interests. No such interests on the record persuade the Court that transfer to the Western District of Washington is unreasonable.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

(1) Amazon's Motion to Transfer Venue (Doc. # 27) is **GRANTED.**

(2) Plaintiff's Motion for Leave to File a Sur-Reply in Response to Defendant's Motion to Transfer Venue (Doc. # 43) is **DENIED AS MOOT.**

(3) The Clerk shall transfer this case to the United States District Court for the Western District of Washington.

(4) The Clerk is thereafter directed to **CLOSE** this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>1st</u> day of August, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE